# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1374-24

L.R., JR.,[1]

    Plaintiff-Respondent,

v.

J.R.B.,

    Defendant-Appellant.

_____

        Submitted June 30, 2026 – Decided July 21, 2026

        Before Judges Chase and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-0868-25.

        Hark & Hark, attorneys for appellant (Michael J. Collis, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identities of the parties.

In this one-sided appeal, defendant J.R.B. appeals from the trial court's January 2, 2025 final protective order ("FPO") entered against him and in favor of plaintiff L.R., Jr. under the Victim's Assistance and Survivor Protection Act ("VASPA"), N.J.S.A. 2C:14-13 to -21. We vacate the FPO, reinstate the temporary protection order ("TPO"), and remand for a new trial because defendant was not informed of his right to an attorney or advised of the consequences of an FPO.

I.

We derive the following facts from the parties' testimony. Plaintiff pled guilty to endangering the welfare of a child in 2001 and was subject to Megan's Law and parole supervision for life ("PSL"). In 2011, plaintiff and defendant worked together as volunteer emergency medical technicians ("EMTs"). Plaintiff served as defendant's supervisor. After plaintiff filed a complaint, defendant received a thirty-day suspension. Defendant then voluntarily left his position.

Plaintiff claimed that his record was expunged in April 2016. Plaintiff moved to Florida in 2018. In 2019, defendant discovered plaintiff's LinkedIn account and saw that plaintiff worked as an EMT in Florida. Defendant then submitted an Open Public Records Act ("OPRA") request to the State Parole

2

Board and obtained plaintiff's judgment of conviction, which included Megan's Law and PSL requirements. After receiving these documents, defendant notified Florida authorities that plaintiff resided in Florida and was required to register under Megan's Law. In November 2019, Florida law enforcement officers visited plaintiff's residence and informed him that he must register as a sex offender because of his New Jersey conviction. Plaintiff subsequently returned to New Jersey and started to work here again as an EMT.

In February 2020, defendant posted the documents obtained through the OPRA request on Facebook. Plaintiff testified that defendant then made additional posts about his past but plaintiff "let it go, cause I was hoping if I let it go it would just stop."

In November 2024, defendant emailed the New Jersey State Emergency Medical Services Task Force ("EMSTF"), stating that he knew of an employee with a child endangerment conviction. That same month, defendant posted on the New Jersey Forest Fire Department's webpage, "[w]hy does the Department allow sex offenders on the crew?" He also linked plaintiff's payroll information from the State Department of Treasury. In December 2024, defendant posted on the EMSTF webpage, "[w]hy does the [EMSTF] have people who pled to endangering the welfare of a child?"

A-1374-24

Plaintiff filed a VASPA complaint and obtained a TPO against defendant on December 26, 2024. In his complaint, plaintiff alleged that defendant committed stalking, N.J.S.A. 2C:12-10, and cyber harassment, N.J.S.A. 2C:33-4.1.

The court held a FPO hearing on January 2, 2025. Both parties appeared self-represented. Before the hearing began, the court informed the parties that they would have the opportunity to testify and cross-examine each other. The record does not reflect that the court advised them of their right to retain counsel or the collateral consequences of an FPO.[2] Both parties then testified.

Plaintiff claimed that defendant's posts endangered his life due to the nature of his offense. He stated that the information remains online and only defendant can remove it.

Defendant explained that he was concerned about plaintiff's background and did not believe plaintiff should serve as an EMT. Defendant further testified

---

[2] Many trial courts will give an opening statement to all participants detailing their right to hire an attorney and the collateral consequences of an FPO. If so, when the parties' individual case is called, the trial court should make sure the parties heard the opening statement and have no questions regarding it. Here, the record does not reflect whether the opening statement was given.

A-1374-24

that he has not attempted to contact plaintiff or have others contact him and has not seen plaintiff in person for over ten years.

After hearing the testimony, the trial court issued an oral decision. The court found plaintiff credible. The court found defendant credible in part but disbelieved some aspects of his testimony. The court did not find a predicate act of cyber harassment. However, the court found that defendant monitored plaintiff online, specifically on LinkedIn, and posted in February 2020 that plaintiff was a sex offender. The court determined that in November 2024, defendant knew plaintiff was associated with the Forest Fire Department and posted plaintiff's payroll and criminal history information on their webpage. The court also found that defendant posted on the EMSTF webpage. The court concluded that defendant's conduct constituted maintaining a close proximity to plaintiff on three occasions with the sole purpose of annoying him and this amounted to stalking. After finding that plaintiff feared for his safety, the court entered an FPO.

This appeal follows.

5

In VASPA cases, "[w]e defer to a trial court's factual findings 'when supported by adequate, substantial, credible evidence.'" C.R. v. M.T. (C.R. II), 257 N.J. 126, 139 (2024) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Our "deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Ibid. (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007)). Thus, we shall not disturb a trial court's factual findings "unless they 'went so wide of the mark that a mistake must have been made.'" Ibid. (quoting MacKinnon, 191 N.J. at 254). However, we review questions of statutory interpretation de novo. Ibid. (citing State v. Fuqua, 234 N.J. 583, 591 (2018)).

VASPA, in pertinent part, provides:

> Any person alleging to be a victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, or stalking or cyber harassment, and who is not eligible for a restraining order as a "victim of domestic violence" as defined by . . . [the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35], may, except as provided in subsection b. of this section,[3] file an application with

_____

[3] Subsection b. addresses "nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, or stalking or cyber-harassment has been committed by an unemancipated minor" or "committed against an unemancipated minor by a parent, guardian, or other person having care,

the Superior Court pursuant to the Rules of Court alleging the commission of such conduct or attempted conduct and seeking a [TPO].

[N.J.S.A. 2C:14-14(a)(1).]

The statute was adopted to authorize courts "to issue protective orders for persons victimized by acts of stalking . . . in situations for which the domestic violence statutes are inapplicable because the victim lacks a prior or existing spousal, household, or dating relationship, or . . . [a] child in common[] with the offender."[4] Assemb. Health Comm. Statement to S. 1517, at 1 (Mar. 20, 2023) (L. 2023, c. 127).

At an FPO hearing:

> [T]he standard for proving the allegations made in the application for a protective order shall be a preponderance of the evidence. The court shall consider but not be limited to the following factors:
>
> > (1) the occurrence of one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at

custody[,] and control of that child" and provides alternative avenues to seek redress.

[4] VASPA replaced and expanded the scope of protections afforded under the Sexual Assault Survivor Protection Act, which provided protection for persons not eligible under the PDVA but was limited to "acts of nonconsensual sexual contact, sexual penetration, or lewdness, or attempts thereof, committed against" a victim. Assemb. Health Comm. Statement to S. 1517, at 1 (Mar. 20, 2023) (L. 2023, c. 127).

A-1374-24

such conduct, or acts of stalking or cyber-harassment against the alleged victim; and

(2) the possibility of future risk to the safety or well-being of the alleged victim.

[N.J.S.A. 2C:14-16(a).]

If an FPO is issued, it shall: (1) prohibit the respondent from having contact with the victim; and (2) prohibit the respondent from committing any future act of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the victim. N.J.S.A. 2C:14-16(e). Further, an FPO may include additional relief, see N.J.S.A. 2C:14-16(f)(1)-(5), and requires placement on a registry, N.J.S.A. 2C:14-20.

III.

We begin with defendant's assertion that the trial court erred because it failed to advise him that he could have an attorney represent him. He also argues that he should have been warned of the collateral consequences of an FPO. We agree.

"At the outset, we reiterate the Legislature clearly intended VASPA to include individuals who are victims of the offenses enumerated in the statute but could not be protected by the PDVA." A.C. v. R.S., 483 N.J. Super 47, 55 (App. Div. 2025); see also R.L.U. v. J.P., 457 N.J. Super. 129, 135 (App. Div. 2018)

A-1374-24

(discussing how "[V]ASPA was intended to fill th[e] void" left by the PDVA). Moreover, our Supreme Court has expressed that VASPA is "a compliment to the PDVA[,]" which "mirrors the PDVA in certain respects and diverges from it in others." C.R. II, 257 N.J. at 143. The Court then detailed the many similarities and some differences between the statutes, which we need not repeat here. Id. at 143-47.

Where the ramifications of a final restraining order ("FRO") and FPO are, at minimum, similar, it stands to reason that the due process rights afforded during an FRO hearing should also be similar. In A.C. v. R.S., we reasoned that the similarities between VASPA and the PDVA implies that VASPA, like the PDVA, is meant to "provide maximum protection for victims." 483 N.J. Super. at 56. That said, there appears to be no indication that the inverse would not also be true—VASPA, like the PDVA, requires the accused be appraised of certain due process rights.

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing that are imposed by the statute." J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (internal citation omitted). "[E]nsuring that defendants are not deprived of their due process rights requires our trial courts to recognize both what those

rights are and how they can be protected consistent with the protective goals of the [PDVA]." Id. at 479.

Due process requires defendants be given "a meaningful opportunity to defend against a complaint." D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013). The right to counsel is an important due process right of a defendant in an action under the PDVA. A.A.R. v. J.R.C., 471 N.J. Super. 584, 588 (App. Div. 2022). While this right does not guarantee the appointment of counsel, it does require "a defendant understand[] that [they have] a right to retain legal counsel and receive a reasonable opportunity to retain an attorney." Ibid. Due process allows litigants a meaningful opportunity to defend against a complaint in domestic violence matters, which would include the opportunity to seek legal representation, if requested. Franklin v. Sloskey, 385 N.J. Super. 534, 540-41 (App. Div. 2006).

As noted above, the record neither demonstrates that the judge informed defendant of his right to be represented by legal counsel in advance of trial, nor that defendant voluntarily and knowingly waived his right to counsel. Guided by the noted principles, we conclude the court mistakenly applied its discretion by its failure to instruct defendant of his right to be represented by legal counsel in advance of trial and by not taking testimony concerning whether defendant

knowingly and voluntarily waived his right to counsel. Although we can appreciate the need for the court to have control over management of its trial list, we discern there would have been no undue prejudice to plaintiff if defendant sought an adjournment to obtain counsel as the TPO protections would have remained in effect. Therefore, we are constrained to vacate the FPO, reinstate the TPO, and remand for a new trial.

Because we are vacating the FPO and remanding for a new trial, we need not reach defendant's arguments that the predicate act of stalking was not met and that the FPO was not necessary for plaintiff's protection. We also do not reach defendant's argument concerning a lack of clarity in the VASPA penalties.

On remand, this matter must be assigned to a different judge because credibility findings were made. R. 1:12-1(d); See Pressler & Verniero, Current N.J. Ct. Rules, cmt. 4 on R. 1:12-1(2025) ("a matter remanded after appeal for a new trial should be assigned to a different judge if the first judge has, during the original trial, expressed conclusions regarding witness credibility" (citing, among others, R.L. v. Voytac, 199 N.J. 285, 306 (2009))). Lastly, our opinion should in no way be construed as an expression of whether plaintiff should receive an FPO when the matter is re-tried.

Vacated and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11

A-1374-24